IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 3:20-cv-00819<br>) |
| MARK A. HUDSON | )<br>) |
| Serve: 4601 Sulgrave Road<br>Richmond, VA 23221 | )<br>)<br>) |
| and | )<br>) |
| SAMANTHA HUDSON | )<br>) |
| Serve: 4601 Sulgrave Road<br>Richmond, VA 23221 | )<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff State Farm Fire and Casualty Company ("State Farm"), by counsel, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, and Fed. R. Civ. P. 57, as its Complaint for Declaratory Judgment states the following:

**NATURE OF THE CASE**

1. This is an action for declaratory judgment in which State Farm seeks a determination of the rights, duties, status and other legal relations and obligations, if any, of the parties hereto under a Homeowners Policy of insurance (Policy Number 46-CQ-Y473-9) ("the Policy") issued by State Farm to Defendants Mark Hudson and Samantha Hudson ("the Hudsons"), insuring their residential dwelling located at 104 W. Hillcrest Avenue, Richmond,

VA 23226 ("the Dwelling").  A true and accurate copy of the Policy, including the policy declarations, forms and endorsements, is attached to this Complaint as **Exhibit 1.**

2. An actual, justiciable controversy exists among the parties regarding their respective rights, duties, status and other legal relations and obligations, if any, under the terms and conditions of the Policy.

3. Specifically, as outlined more fully below, State Farm seeks a declaratory judgment as to whether it is obligated under the terms and conditions of the Policy to extend coverage and/or make payments under the Policy for property losses (involving the Dwelling, personal property, and additional living expenses) allegedly sustained by the Defendants as a result of a fire loss that occurred at the Dwelling on or about February 7, 2020.

## JURISDICTION

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), as complete diversity exists between the plaintiff and each defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Specifically:

- Diversity of citizenship:  State Farm is an Illinois corporation with its principal place of business in Bloomington, Illinois, and therefore a citizen of Illinois pursuant to 28 U.S.C. § 1332(c)(1).  Defendants Mark Hudson and Samantha Hudson both are residents, domiciliaries and citizens of Virginia.  Neither of the defendants is a citizen of Illinois.

- Amount in controversy:   The Policy's Section I, Coverage A – Dwelling Limit is $843,525; the Section I, Coverage B – Personal Property Limit is $632,644; and the Section I, Coverage C – Loss of Use Limit is $253,058, subject to a deductible of $2,000.  With respect to Coverage A (Dwelling), the Hudsons have asserted a claim under the Policy for approximately $972,430.  With respect to Coverage B (Personal Property), the Hudsons have asserted a claim under the Policy for approximately $545,554.22.  With

respect to Coverage C (Loss of Use), the Hudsons have asserted a claim under the Policy for the policy limit of $253,058. The Hudsons have demanded payments (totaling $1,771,042.22, as summarized above) under Section I of the Policy for items of loss, damage and/or repair which State Farm contends are not covered under the terms and conditions of the Policy, and which exceed the value of $75,000, exclusive of interest and costs.

## VENUE

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). The Eastern District of Virginia, Richmond Division is a judicial district and division in which: (i) all defendants reside, and all defendants are residents of Virginia; (ii) a substantial part of the events (including the subject fire loss) giving rise to this action occurred; (iii) the property which is the subject of this action (104 W. Hillcrest Avenue, Richmond, VA 23226) is situated; and (iv) all defendants are subject to the Court's personal jurisdiction with respect to this action.

## PARTIES

6.     State Farm is an Illinois corporation with its principal place of business in Bloomington, Illinois, and a citizen of the State of Illinois. State Farm is licensed to do business as an insurance company and is doing business in the Commonwealth of Virginia. State Farm issued the Homeowners Policy (Policy Number 46-CQ-Y473-9) which is the subject of this action.

7.     The Hudsons are residents, domiciliaries, and citizens of Virginia. At all pertinent times, the Hudsons owned the residential dwelling – located at 104 W. Hillcrest Avenue, Richmond, VA 23226 ("the Dwelling") – which is the subject of this action, and both were named insureds under the subject Homeowners Policy issued by State Farm.

**FACTS**

8. On February 7, 2020, a fire occurred at the Dwelling as a result of a failure in a light switch located in the first-floor recreation room. Flame damage was confined to the wall cavity, wainscoting and light switch, resulting in damage to a portion of the Dwelling and some of its contents ("the Loss").

9. At the time of the Loss, the Hudsons were named insureds under the subject Homeowners Policy (Policy Number 46-CQ-Y473-9), which insured the Dwelling and its contents. A true copy of the Policy is attached hereto as **Exhibit 1**.

10. After the Loss, the Hudsons notified State Farm and made a claim under Section I of the Policy for damage to the Dwelling (Coverage A), damage to Contents / Personal Property (Coverage B), and Loss of Use (Coverage C) ("the Claim").

11. Following notice of the loss, State Farm promptly began investigating and adjusting the Claim. During the course of adjusting the Claim, however, a number of coverage questions have arisen, including the following:

   i. The Hudsons claim that the Dwelling requires a whole-house renovation, at an estimated cost of $972,430. The Policy only provides coverage for accidental direct physical loss to the property described in Coverage A. The proposed whole-house renovation project is not covered by the Policy because it includes repairs / renovations to the Dwelling which do not involve accidental direct physical loss to the insured property, and is not limited to the cost to repair or replace the damaged part of the property.

   ii. The Hudsons claim that the proposed whole-house renovation is required due to the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants in the Dwelling – namely, lead. The Policy excludes

4

    coverage for contamination or pollution, unless the presence, discharge, dispersal, seepage, migration, release, or escape of such contaminants or pollutants was caused by an insured peril – i.e., fire or smoke. State Farm's investigation reveals that the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants in the Dwelling was not caused by fire, smoke or any other insured peril. Accordingly, the Policy excludes coverage for the claimed Dwelling loss attributable to contamination or pollution.

iii. The Hudsons claim that all (or most) of their personal property in the Dwelling was damaged and must be replaced as a result of this loss, and have submitted a contents claim which totals $545,554.22. However, Section I of the Policy limits coverage to accidental direct physical loss to the property described in Coverage B caused by specified perils, including fire and smoke. Upon information and belief, most of the items of personal property claimed by the Hudsons either were not damaged by fire or smoke, or can be cleaned. The Hudsons' contents claim is not covered by the Policy insofar as it includes multiple items of personal property that were not damaged by fire or smoke.

iv. The Policy conditions obligate the Hudsons to cooperate with State Farm in the investigation of the claim and perform certain duties, including the duty to (1) "protect the property from further damage or loss and also … make reasonable and necessary temporary repairs required to protect the property"; (2) "prepare an inventory of damage or stolen personal property …showing in detail the quantity, description, age, replacement cost, and amount of loss; and … attaching all bills, receipts, and related documents that substantiate the figures in the inventory"; (3) "submit to us, within 60 days after the loss, your signed, sworn proof of loss that

sets forth, to the best of your knowledge and belief … specifications of any damaged structure and detailed estimates for repair of the damage; … an inventory of damaged or stolen personal property … [and] receipts for additional living expenses incurred and records supporting the fair rental value loss[.]" The Hudsons have failed to comply with all applicable policy conditions.

v. During the course of submitting the Claim, the Hudsons have misrepresented or concealed material facts or circumstances to State Farm, including facts relating to their claim for additional living expenses (Coverage C), in violation of the Policy condition which provides that "[t]his policy is void as to you and any other insured if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss."

12. An actual, justiciable controversy exists as to whether State Farm is obligated under Section I of the Policy to provide coverage and make indemnity payments for the Claim.

## COUNT I
## Request For Declaratory Relief – Policy Void Due to Fraud or Concealment

13. The allegations set forth in paragraphs 1 through 12 above are hereby re-alleged and incorporated by reference as if fully set forth herein.

14. The SECTION I AND SECTION II – CONDITIONS of the Policy provide in part as follows: "**Concealment or Fraud.** This policy is void as to *you* and any other *insured* if *you* or any other *insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss."

15. By statute in Virginia, the "entire policy shall be void, if whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance

6

concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." Va. Code § 38.2-2105(A).

16. Under Virginia law, "nothing is better settled than that the assured must observe, in dealing with the insurer, the utmost good faith, without which there can be no recovery." *C.C. Vaughan & Co. v. Virginia Fire & Marine Ins. Co.*, 102 Va. 541, 545, 46 S.E. 692, 693-94 (1904).

17. During the course of submitting the Claim, Mark Hudson intentionally misrepresented or concealed facts or circumstances that were material to the Policy and/or the Claim, including but not limited to the following:

    i. At various times in February, March, April and May 2020, in connection with the Hudsons' claim under the Policy for additional living expenses (ALE), Mr. Hudson represented to State Farm that the Hudsons were leasing a dwelling located at 4601 Sulgrave Road, Richmond, VA 23221, for a rental fee of $695 per night, or approximately $21,000 per month. In support thereof, in or about February 2020, Mr. Hudson sent State Farm a purported short-term lease agreement, and a short-term lease agreement extension agreement, purportedly between Hudson Holdings, LLC and Mark Hudson relating to the alleged lease of the dwelling at 4601 Sulgrave Road. State Farm relied upon these representations and made indemnity payments under Section I of the Policy totaling $77,145, for the Hudsons' ALE claim. State Farm subsequently learned that these representations regarding the alleged lease were false. At all relevant times, the Hudsons actually were staying with Mr. Hudsons' parents at their home in Windsor Farms and, upon information and belief, the Hudsons neither incurred nor paid a rental fee of $695 per night. The Hudsons never informed State Farm

7

      that the purported lease agreement related to a home where Mr. Hudsons' parents were already living, nor did they inform State Farm that the Hudsons were only living in a portion of the parents' home. Neither Hudson Holdings LLC nor Mr. Hudsons' parents ever received any rent payments in connection with this purported lease agreement. Upon information and belief, the purported short-term lease agreement and short-term lease agreement extension documents submitted by the Hudsons to State Farm in support of this claim were sham documents designed to induce State Farm to make ALE payments under the Policy. On or about June 10, 2020, the Hudsons refunded the ALE payments (totaling $77,145) that they had wrongfully and fraudulently induced State Farm to pay.

ii. Mr. Hudson misrepresented facts relating to the Hudsons' financial status, and their contents claim, during the course of submitting the Claim. On March 4, 2020, during a phone conversation with a State Farm Claim Team Manager regarding the Claim, the Claim Team Manager informed Mr. Hudson that in order to evaluate and adjust the Hudsons' contents claim, State Farm would need the ages of the items they are claiming. As documented by the Claim Team Manager, Mr. Hudson responded that "he isn't providing ages and will negotiate a settlement with us." Mr. Hudson then represented that "he makes 2 million a year and purchased all items last year." These representations were false. During his examination under oath (EUO) on July 29, 2020, Mr. Hudson testified that his income in 2019 and 2020 was minimal -- about $1,350 in 2019, and about $15,000 in 2020 (as of July 2020, year to date). Mr. Hudson agreed during his EUO that he does not make $2 million per year, contrary to his representations to State Farm on March 4, 2020. Additionally, both Mark Hudson and Samantha

        Hudson testified during their July 29, 2020 EUOs that the items claimed in their inventory were acquired over the course of their approximately 15-year marriage, and some of the items were acquired before their marriage. Mr. Hudson's statement to State Farm on March 4, 2020 that he "purchased all items last year" was false, as was his statement that same date suggesting that he has an annual income of $2 million.

iii. During the course of submitting the Claim, Mr. Hudson also misrepresented the involvement of one of his business entities, A One Man Band, LLC. Multiple emails were sent to State Farm by "Mark Hudson – Managing Member A One Man Band, LLC" purportedly on behalf of the Hudsons, relating to the Claim. In a "Response Letter" from "Mark Hudson – Managing Member A One Man Band, LLC" dated March 22, 2020, Mr. Hudson represented to State Farm that "[o]n 2/21/20 A One Man Band LLC was hired to manage the claim and assist the insured with the performance of their duties as required by the policy as well as any and all actions that may be necessary to ensure the proper processing of this claim which includes, but is not limited to, meeting, scheduling, coordination with – contractors, mitigation experts [etc.] … and the coordination of efforts to return the insured back to their original state and other requirements that would not have otherwise been required had the loss event not occurred." This representation was false. During his July 29, 2020 EUO, Mr. Hudson testified that A One Man Band LLC was never hired to do anything to assist with the Claim, nor did A One Man Band LLC have any involvement with this claim whatsoever.

iv. During the course of submitting the Claim, beginning in February 2020, Mark Hudson represented to State Farm that he had hired an independent company,

9

Workforce Solutions, to handle the inventory of the Hudsons' contents claim. Workforce Solutions ultimately billed over $30,000 to inventory the Hudsons' contents claim, for which the Hudsons have demanded payment under the Policy. Mr. Hudson concealed the fact that he is the owner and CEO of Workforce Solutions.

18. Upon information and belief, the false statements summarized above material to the claim because they concerned subjects that were relevant and germane to the Company's investigation as it was then proceeding, and were made intentionally in order to affect State Farm's attitude and action on the Claim.

19. An actual, justiciable controversy exists as to whether the Policy is void because the Hudsons intentionally misrepresented material facts or circumstances to State Farm during the submission of the Claim, thereby barring their claims under the Policy.

## COUNT II
### Request For Declaratory Relief – Coverage For Section I Claims

20. The allegations set forth in paragraphs 1 through 19 above are hereby re-alleged and incorporated by reference as if fully set forth herein.

21. Alternatively, in the event the Court determines that the Hudsons are not barred from a recovery under the Policy due to fraud or concealment as set forth in Count I, *supra*, an actual, justiciable controversy exists as to whether the Hudsons' claims under Section I of the Policy for damage to the Dwelling (Coverage A), damage to Contents / Personal Property (Coverage B), and Loss of Use (Coverage C) are covered under the terms and conditions of the Policy.

22. Section I of the Policy (COVERAGE A – DWELLING) provides in part: "*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded

or limited in this policy."

23. The Hudsons claim that the Dwelling requires a whole-house renovation, at an estimated cost of $972,430. However, the proposed renovation project is not covered by the Policy because it includes repairs / renovations to the Dwelling which do not involve accidental direct physical loss to the insured property, and the proposed repairs / renovations are not limited to the cost to repair or replace the damaged part of the property.

24. The Policy, at SECTION I – LOSSES NOT INSURED, further provides in part:

1. *We* will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the following perils listed in items a. through k. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

f. contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.**

(1) Contaminants and pollutants include but are not limited to any:

(a) solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead; …

(2) *We* also will not pay for:

(a) losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. …

(b) the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

(c) the cost of testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants; …

11

25. An actual, justiciable controversy exists as to whether the Hudsons' dwelling claim is excluded by operation of the Policy's pollution exclusion (cited above). The Hudsons claim that the proposed whole-house renovation is required due to the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants in the Dwelling – namely, lead. State Farm's investigation reveals that the reported presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants in the Dwelling was not caused by fire, smoke or any other insured peril. Accordingly, the Policy excludes coverage for the claimed Dwelling loss attributable to contamination or pollution.

26. With respect to the Hudsons' contents claim, Section I of the Policy (COVERAGE B – PERSONAL PROPERTY) provides in part:

> *We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy.
>
>   1. **Fire or lightning**.
>
> \* \* \*
>
>   7. **Smoke**, meaning abrupt and accidental damage from smoke.

27. An actual, justiciable controversy exists as to whether the Hudsons' contents claim is covered under the terms and provisions of the Policy. The Hudsons claim that all (or most) of their personal property contained in the Dwelling was damaged and must be replaced as a result of this loss, and have submitted a contents claim which totals $545,554.22. Upon information and belief, however, most of the items of personal property claimed by the Hudsons either were not damaged by fire or smoke, or can be cleaned. The Hudsons' contents claim is not covered by the Policy to the extent that it includes items of personal property that were were not damaged by fire or smoke.

28. With respect to the Hudsons' claim under Coverage C for Additional Living Expenses (ALE), the Policy provides in part as follows:

> **COVERAGE C – LOSS OF USE**
>
> The most *we* will pay for the sum of all losses combined under **Additional Living Expense**, **Fair Rental Value**, and **Prohibited Use** is the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**.
>
> 1. **Additional Living Expense.** When a *loss insured* causes the *residence premises* to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living. *Our* payment is limited to incurred costs for the shortest of:
>
>  a. the time required to repair or replace the premises; or
>  b. the time required for *your* household to settle elsewhere …

29. An actual, justiciable controversy exists as to whether the Hudsons have incurred an increase in costs to maintain their normal standard of living and, if so, the reasonable and necessary increase of any such incurred costs, and the amount (if any) that may be owed under the Policy for any such incurred costs.

30. The Policy, at SECTION I – CONDITIONS, further provides in part as follows:

> 2. **Your Duties After Loss**. After a loss to which this insurance may apply, *you* must cooperate with *us* in the investigation of the claim and also see that the following duties are performed:
>
>  b. protect the property from further damage or loss and also:
>
>   (1) make reasonable and necessary temporary repairs required to protect the property; and
>   (2) keep an accurate record of repair expenses;
>
>  c. prepare an inventory of damaged or stolen personal property:
>
>   (1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and
>   (2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory;
>
>  d. as often as *we* reasonably require:

13

      (1) exhibit the damaged property;
      (2) provide *us* with any requested records and documents and allow *us* to make copies; and
      (3) give statements and submit to examinations under oath; and

    e. submit to *us*, within 60 days after the loss, *your* signed, sworn proof of loss that sets forth, to the best of *your* knowledge and belief:
      (1) the time and cause of loss;
      (2) interest of the *insured* and all others in the property involved and all encumbrances on the property;
      (3) other insurance that may cover the loss;
      (4) changes in title or occupancy of the property during the term of this policy;
      (5) specifications of any damaged structure and detailed estimates for repair of the damage;
      (6) an inventory of damaged or stolen personal property described in 2.c.;
      (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; …

31.    Under Virginia law, the aforementioned policy conditions are conditions precedent to a recovery under the Policy.

32.    An actual, justiciable controversy exists as to whether the Hudsons have complied with the aforementioned Policy conditions. To date, the Hudsons have not submitted an inventory of damaged personal property which shows in detail the quantity, description, age, replacement cost, and amount of loss, and attaches all bills, receipts, and related documents that substantiate the figures in the inventory, as required by the Policy. Nor have the Hudsons submitted a compliant Proof of Loss which includes specifications of any damaged structure and detailed estimates for repair of the damage; an inventory of damaged personal property as described above; and receipts for additional living expenses incurred and records supporting the fair rental value loss.

**PRAYER FOR RELIEF**

WHEREFORE, State Farm Fire and Casualty Company prays that this Honorable Court grant State Farm the requested declaratory relief and enter an Order which:

(a) declares the rights, duties, status and other legal relations and obligations, if any, of the parties under the subject Homeowners Policy of insurance (Policy Number 46-CQ-Y473-9) issued by State Farm to Defendants Mark Hudson and Samantha Hudson, with respect to the Loss, the Claim, the Policy, and the coverage questions identified herein;

(b) declares that the Policy is void because the Hudsons intentionally misrepresented material facts or circumstances to State Farm during the submission of the Claim, thereby barring the Hudsons' claims under the Policy;

(c) alternatively, in the event the Court determines that the Policy is not void (and the Claim is not barred) due to fraud or concealment during the submission of the Claim, declares whether State Farm is obligated under the terms and conditions of the Policy to provide coverage and make indemnity payments for the Hudsons' claims under Section I of the Policy with respect to the Dwelling (Coverage A), Contents / Personal Property (Coverage B), and Loss of Use / Additional Living Expenses (Coverage C);

(d) awards such further necessary or proper relief based on the Court's declaratory judgment or decree in accordance with 28 U.S.C. § 2202; and

(e) awards State Farm its costs incurred in this action.

Respectfully submitted,

STATE FARM FIRE AND CASUALTY COMPANY

By:   /s/ Alexander S. de Witt
      Alexander S. de Witt, Esq. (VSB 42708)
      FREEBORN & PETERS LLP
      901 East Byrd Street, Suite 901
      Richmond, Virginia 23219
      Phone: (804) 644-1300
      Direct: (804) 799-7790
      Fax: (804) 644-1354
      E-mail: adewitt@freeborn.com